B. Stafford Mantz v. Commissioner. Frederic G. Travis and Barbara Travis v. Commissioner.
Mantz v. Commissioner
Docket Nos. 2298-64, 5758-65.
United States Tax Court
T.C. Memo 1966-272; 1966 Tax Ct. Memo LEXIS 12; 25 T.C.M. (CCH) 1387; T.C.M. (RIA) 66272; December 21, 1966
Nahum A. Bernstein, for the petitioner in Docket No. 2298-64. Fred L. Altman, for the petitioners in Docket No. 5758-65. Joel Kamens, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in the 1962 income tax of petitioner B. Stafford Mantz in Docket No. 2298-64 in the amount of $1,250.40 and of Frederic G. and Barbara Travis in Docket No. 5758-65 in the amount of $1,284.55. The cases were consolidated for trial as the only issue was who was entitled to dependency exemptions for the five children taken as exemptions in both returns involved and disallowed *13 by respondent in both deficiency notices. Findings of Fact Some of the facts have been stipulated and they are found accordingly. Petitioner B. Stafford Mantz, who resides in Hasbrouck Heights, New Jersey, filed his individual income tax return for the taxable year 1962 with the district director of internal revenue, Newark, New Jersey. Petitioners Frederic G. Travis and Barbara Travis, who reside in Port Washington, New York, filed their joint income tax return for the taxable year 1962 with the district director of internal revenue, Brooklyn, New York. Barbara was formerly the wife of B. Stafford Mantz. She lived with Mantz and their five children (then ranging in age from 6 to 13) in a house they jointly owned at 17 Tappan Drive, Huntington Station, New York, until sometime in May of 1962. She was divorced from Mantz on June 6, 1962, and she married Frederic G. Travis on December 8, 1962. The fair rental value of the house Mantz and Barbara owned in 1962 was $225 a month. On May 24, 1962, Mantz and Barbara entered into a separation agreement, which was later incorporated into their June 6, 1962, divorce decree. By this agreement Barbara was given custody of the children *14 and Mantz agreed to pay Barbara $60 a month for the support of each of their five children and $100 a month for the support of Barbara. Barbara was given the right to retain complete possession of their residence providing she pay all maintenance charges, including interest and amortization payments on the mortgage, then in the principal sum of around $11,400. However, in the event Barbara decided to sell the house Mantz was to cooperate in the sale and any future mortgage amortization payments made by Barbara were to be credited to her in the computation of the 50-50 division of the sale proceeds between Mantz and Barbara. The latter was also to assume the entire balance due on a bank loan in the original principal amount of $3,000. The expenditures made by Barbara and Mantz for the support of the children for the year 1962 were as follows: Item of support
Barbara
Mantz
Total
Lodging
$1,714.28
$ 401.78
$ 2,116.06
Food
801.80
566.74
1,368.54
Utilities
295.85
77.50
373.35
Telephone
48.72
48.72
Automobile
216.30
138.43
354.73
Appliances
73.45
73.45
Repairs
58.35
58.35
Household maintenance
1,726.10
12.78
1,738.88
Fuel
139.90
37.09
176.99
Bicycles
31.53
31.53
Laundry, cleaning
257.60
17.82
275.42
Baby sitters
127.80
127.80
Cleaning and floor polishing
435.85
435.85
Medical expenses
437.11
85.40
522.51
Lessons, clothing, etc.
2,141.94
101.97
2,243.91
School lunches
300.00
300.00
Allowances
249.60
249.60
Birthday party
100.00
100.00
Total
$9,156.18
$1,439.51
$10,595.69
*15 From June 1, 1962 to December 31, 1962, Barbara received checks from Mantz totaling $1,825. One further check from Mantz to Barbara in the amount of $150 was not received until January of 1963. It is stipulated that at various times during the year 1962, Barbara received checks from her mother Rita B. Schmitz and her father Ray M. Schmitz as follows: Rita B. Schmitz
Jan. 15
$ 400
Jan. 23
76
Mar. 8
180
Apr. 9
180
May 8
180
May 15
150
Aug. 22
50
Sept. 4
50
Oct. 6
100
Total
$1,366
Ray M. Schmitz
Jan. 26
$ 500
Mar. 9
500
Apr. 9
500
Apr. 26
500
May 9
500
May 31
1,210
June 1
425
June 9
500
June 21
500
July 9
500
July 12
133
July 14
500
Sept. 1
300
Sept. 30
2,000
Total
$8,568
On June 5, 1962, Ray M. Schmitz transferred stock having a market value of approximately $71,250 to a trustee (a New York banking corporation) to be held by the trustee for the benefit of his two daughters and their issue subject to the terms, conditions, powers and agreements set forth in the trust instrument. The trust was irrevocable and the trust instrument gave the trustee broad powers to accumulate income or distribute income to settlor's *16 daughters and their issue or in the trustee's uncontrolled discretion to one to the exclusion of another or others. There was even a clause giving the trustee power to pay to any beneficiary part of the principal of the trust as the trustee in its sole discretion might deem appropriate. It is stipulated that in 1962 Barbara received 6 payments from the above described trust each in the amount of $1,102, or a total of $6,612. Opinion Section 151, I.R.C. of 1954 allows a dependency exemption for each dependent and section 152 includes as a dependent sons or daughters if over half of their support was received from the taxpayer. Our findings indicate a total of $10,595.69 expended in 1962 for the support of the five children. We have found Mantz paid $1,439.51 for such support, and, in addition, he paid Barbara $1,825 which we can assume was used by her for support of the children. [1] This would mean his contribution was no more than $3,264.51 or far less than half of the total amount expended for the support of the children in 1962. Even if we also add other items which he alleges should be added to his contribution such as life insurance premiums, $95.35, *17 and cash expenditures in the sum of $801.50 he alleges were made for the children (represented only by his claimed allocable amount of his 1962 canceled checks made out to cash), the total would still be less than half of the children's total support. The insurance premium and unexplained and unsubstantiated cash expenditures cannot be allowed as support items furnished by him. Mantz argues the item of housing should be eliminated entirely as he and Barbara owned the home as joint tenants. But possession was awarded to Barbara during the last 7 months of 1962 so the lodging was furnished by her during this period. Delbert D. Bruner, 39 T.C. 534. It was Mantz who testified the fair rental value of the house was $225 a month. Our computation gives each $401.78 (5/7 of 5 X $225) for the first five months and Barbara an additional $1,312.50 (5/6 of 7 X $225) for the next 7 months, or a total lodging item for Barbara of $1,714.28. The birthday *18 item of $100 was actually a large birthday party for three of the children with birthdays close together where Barbara hired a bus and swimming pool and engaged a lifeguard for an all-day party. We hold Mantz failed to sustain his burden of proving he contributed over half of the support of the children in 1962. As indicated, we have found Mantz paid no more than $3,264.51 for the children's support in 1962. This means Barbara paid the balance ($10,595.69-$3,264.51), or $7,331.18. Respondent concedes she furnished over half of the children's support and would be entitled to the exemptions if the funds she received from her parents and the trust, which were used by her for the children's support, are to be considered Barbara's contributions toward the children's support. On brief, respondent suggests the Court could conclude the money Barbara received directly from her parents could be direct gifts from the grandparents to the children, and the money she received from the trust and used for the children's support could be held to be the separate property of the children. This is a suggestion respondent made for the first time at the trial. On brief, respondent states that initially *19 he had taken the position that either one of the divorced parents might be entitled to claim the children as exemptions but both could not. Barbara testified the money she received directly from her parents (with the exception of the $2,000 she received from her father on September 30, 1962) was in response to her plea for help in supporting herself and her children. She had her own checking account where she deposited funds she received from her parents. Respondent admits on brief that if Barbara was free to use the money as she saw fit, her use of it for the support of the children would be her contribution. It fairly appears that she was under no restrictions as to the use of these funds. She did use the funds to support herself and her children for, as the record shows, she received but little support money from her husband during the first five months of 1962 when he was living in their home. The record shows he was out of work during a portion of this period. We could not hold under this record that the money Barbara spent for the support of the children should be anything other than her contribution merely because the source of the funds was amounts given to her by her parents. *20 The same is true with respect to the funds received from the trust. It is true that the two daughters of the settlor and "said daughters' issue" were to be beneficiaries of the trust but other provisions of the trust instrument make it clear that the adult beneficiaries were to be the primary beneficiaries. If the trust was terminated by events therein provided, the corpus and any income were to be divided between the two daughters, if living, and the issue of a deceased daughter with some limited power of appointment by the daughters in their wills. The trustee had to render his annual account to the two daughters and their approval was binding. It is stipulated Barbara received $6,612 from this trust (which included payments from principal) and in her joint income tax return for 1962 she reported receipt of income from this trust in the sum of $615.62. We hold the money Barbara received from this trust was her money and not the separate property of the children. On the whole record we hold Barbara furnished over half the support of the five children and is entitled to the dependency exemptions she took. Because there were conceded adjustments in her case, Decision will be *21 entered under Rule 50 in Docket No. 5758-65. Decision will be entered for the respondent in Docket No. 2298-64. Footnotes
1. We treat the money Mantz paid Barbara during the last 7 months as children support payments though actually, on his 1962 income tax return, he labeled $475 of this money as alimony paid to Barbara and took deduction therefor.↩